**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOSHUA COWLEY,<br><br>           Plaintiff,<br><br>     v.<br><br>PRUDENTIAL SECURITY, INC.,<br><br>           Defendant. | Case No.: 1:19-cv-01472-NONE-JLT<br><br>FINDINGS AND RECOMMENDATION TO GRANT THE MOTION TO TRANSFER VENUE<br><br>(Doc. 21) |

On July 2, 2020, Defendant filed a motion to change venue. (Doc. 21.) Plaintiff filed an opposition on July 16, 2020 (Doc. 23), and on July 23, 2020, Defendant filed a reply (Doc. 24). The motion was set to be heard by U.S. District Judge Dale A. Drozd but was referred to the assigned magistrate judge on November 30, 2020. (Doc. 66.) For the reasons set forth below, the Court recommends the motion to change venue be GRANTED.

**I.     BACKGROUND**

On October 11, 2019, Plaintiff filed a lawsuit in state court under the Private Attorneys General Act in Sacramento Superior Court, Case No. 34-2019-00266862-CU-OE-GDS, asserting that Prudential Security violated California wage and hour laws as to its California-based, non-exempt employees who served as security guards. Plaintiff alleged Prudential failed to pay them minimum wages, overtime wages, all wages following separation of employment, and failed to reimburse them for necessary business expenses ("State Case"). (Doc. 21-1 at 6-7, 9; see Scheithauer Decl., ¶ 2 and

Exh. 1 (State Case Complaint).) The Sacramento Court ordered the case transferred to Kern County. (See Scheithauer Decl., ¶ 2 and Exh. 2 (Transfer Order).)

After filing the State Case, Plaintiff filed this federal lawsuit. (Doc. 21-1 at 9.) Plaintiff alleges here that the wage claims arise under both the federal Fair Labor Standards Act and under California wage and hour laws. (See Scheithauer Decl., ¶ 4 and Exh. 3.) Plaintiff's Federal Case alleges three primary claims: (1) violation of the FLSA, (2) violation of California's Labor Codes; and (3) violation of California's Unfair Competition Law (for violating the Labor Code). (See id.) Defendant alleges that like the State Case, the claims in the Federal Case allege that Prudential Security failed to pay minimum wages, overtime wages, premium pay for missed meal and rest periods, unreimbursed business expenses and is liable for related inaccurate wage statements and waiting time penalties. (Doc. 21-1 at 9-10.) Plaintiff seeks to certify a nationwide collective action in connection with his FLSA claim and a California class action of California employees for his California claims in the Federal Case. (Id.)

Beginning in February 2020, Prudential Security commenced a program to settle with all current and former employees of Prudential Security that had worked in California as to the claims asserted by Plaintiff. (See Keywell Decl., ¶ 10.) In connection with offering individual settlements, Prudential Security provided a cover letter explaining the claims in both the State Case and this case and enclosing copies of both complaints so each person could read the allegations. (Id.) Defendant reports that 27 of the 36 current and former California employees accepted the settlement offer and signed a Settlement Agreement and Release of Claims ("Settlement Agreements"), which among other things, expressly resolved their claims in this case. (Id.) Those Settlement Agreements were signed in the first week of March 2020 (prior to the COVID shutdown). (Id.) Only nine of Prudential Security's current or former non-exempt employees in California have not released their claims. (Id.) According to Defendant, most of those 9 remaining persons are former employees who are unreachable because Prudential Security lacks current contact information for them. (Id.)

**II.     LEGAL STANDARD**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil matter to any other district or division where it might have been brought." 28 U.S.C.

§ 1404(a). The Supreme Court explained the § 1404(a) analysis should be an "individualized, case-by-case consideration of convenience and fairness." *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964). Accordingly, courts consider several factors, including:

> (1) plaintiff's choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation with other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time of trial in each forum.

*Williams v. Bowman*, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001) (citing *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986)); *see also Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000). The party seeking a change of venue has the burden to demonstrate the transfer is appropriate. *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979). Whether to grant a change of venue is within the discretion of the District Court. *See Ventress v. Japan Airlines*, 486 F.3d 1111, 1118 (9th Cir. 2007) (explaining the determination of the proper venue "involves subtle considerations and is best left to the discretion of the trial judge").

### III.  DISCUSSION

### A.  Numerosity for Class Action

Defendant contends that the gravamen of this case is the FLSA action with its center of gravity in Michigan and Plaintiff's putative California class action lacks sufficient numerosity. (Doc. 21-1 at 13-14.) Defendant asserts that Plaintiff worked for Prudential Security in California City, California for a very short period of time—just over two months. (Keywell Decl., ¶ 8.) Defendant reports that Plaintiff has asserted a putative nationwide collective action under the FLSA involving all Prudential Security non-exempt employees "throughout the United States," as well as asserting individual claims and putative class claims under Rule 23 relating to his California claims. (See Doc. 1.) Defendant argues that the reality is that the FLSA is the main part of this case (close to 1,000 employees[1] at issue in the FLSA claim versus at most 9 eligible persons remaining for the California claims) and the vast majority of the relevant current and former employees live and work in Michigan. (Keywell Decl., ¶¶ 6, 11-12.) Defendant argues that Plaintiff's California claims will not be certified as a class for, among

---

[1] This number has grown to over 3,000. (Doc 22; Doc. 64 at 3)

3

other reasons, lack of numerosity, and Plaintiff will be left with a solo claim under California law. (Doc. 21-1 at 13.) Defendant contends that those claims are not appropriate for Plaintiff to try to anchor the case in California. (Id.) Defendant reports that of the 36 total California employees, all but 9 have affirmatively settled their claims. (Keywell Decl., ¶ 10.) Defendant asserts that this leaves only 9 California employees, and 9 people is not sufficient to maintain a class action on the California claims. (Id.)

Plaintiff argues that there is no basis on which to conclude that any California class member has released anything, noting that Defendant does not submit any settlement agreements or releases, and also suggesting that Defendant's settlement communications were coercive. (Doc. 23 at 11-13.) In reply, Defendant states that it provided detailed declarations in support of its arguments, and also made all the settlement agreements available to Plaintiff in response to discovery requests. (Doc. 23 at 8-9.) Defendant also asserts that it obtained lawful release agreements from class members. (Id. at 9.) Defendant also notes that Plaintiff did not contest the authority demonstrating that 9 people is not sufficient to certify a California class. (Doc. 24 at 8.)

Though the plaintiff asserts that these settlements may not be valid, even if they are not, in general, a putative class of 36 members will not meet the numerosity element to form a class. *Carlino v. CHG Med. Staffing, Inc.*, 2019 WL 1005070, at *3 (E.D. Cal. Feb. 28, 2019) ["A proposed class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Though there is no strict number requirement for numerosity, courts have routinely held that classes comprised of more than forty members will satisfy this prerequisite. *See Ikonen v. Hartz Mt. Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988) ("As a general rule, classes of 20 are too small, classes of 20–40 may or may not be big enough depending on the circumstances of each case, and classes of 40 or more are numerous enough."); see *also Dunakin v. Quigley*, 99 F. Supp. 3d 1297, 1327 (W.D. Wash. 2015) ("Generally, 40 or more members will satisfy the numerosity requirement.") (quoting *Garrison v. Asotin County*, 251 F.R.D. 566, 569 (E.D. Wash. 2008)); *McMillon v. Hawaii*, 261 F.R.D. 536, 542 (D. Haw. 2009)."] Notably, review of the complaint filed in this action, does not contradict that the element of numerosity cannot be met. The complaint reads, "Defendant has employed potentially hundreds of non-exempt, hourly security guards during the applicable statutory period. The number of

4

putative Class Members are therefore far too numerous to be individually joined in this lawsuit." The insertion of the word "potentially" makes the allegation as to numerosity, ambiguous. *See Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 660 (E.D. Cal. 2008) ("Although plaintiff has not provided the court with any form of official documentation supporting this approximation, a court may rely on common sense assumptions to support findings of numerosity.") (collecting cases). With this ambiguous allegation and the lack of anything further addressing the evidence submitted by the defendant, it appears the prima facie case as to numerosity is not met. *See Celano v. Marriott Int'l, Inc.*, 242 F.R.D. 544, 549 (N.D. Cal. 2007) ("[C]ourts generally find that the numerosity factor is satisfied if the class comprises 40 or more members and will find that it has not been satisfied when the class comprises 21 or fewer."); see also Rubenstein, Newberg on Class Actions § 3:13 (indicating that "a good-faith estimate of the class size is sufficient" to establish numerosity where it is supported by "enough evidence of the class's size to enable the court to make commonsense assumptions regarding the number of putative class members")

The plaintiff does not address the evidence submitted by the defense and, instead, argues that he has been unable to conduct discovery as to the settlement efforts. (Doc. 23) However, at the hearing on the motion to compel, Plaintiff's counsel admitted that they had been given addresses for all of the 36 California employees/former employees and had chosen not to contact them via mail, preferring to wait until they could obtain telephone numbers from the defendant. Because this motion was filed in late July, had Plaintiff undertaken any efforts to track down these employees by mail (which is how the defense contacted them), seemingly, Plaintiff could have made determined whether the settlement efforts were proper and whether these employees had any information that there were other California employees that would expand the numbers beyond 36.[2, 3]

**B.      This Action Could have been Brought in the Eastern District of Michigan**

Transfer of venue under 28 U.S.C. § 1404(a) is only appropriate if the action could have been

---

[2] Once again, at the hearing on the motion to compel (Doc. 65), Plaintiff's counsel admitted that Mr. Cowley had no information as to the number of putative class members such to contradict the number evidenced by the defense.
[3] At the hearing on the motion to compel (Doc. 65), Plaintiff's counsel admitted that the class action is likely not viable due to an evidentiary failing as to the element of numerosity and admitted it had no evidence to contradict the defendant's claim that there were only 36 prospective class members, assuming the settlements are not valid.

brought in the transferee venue. 28 U.S.C. § 1404(a). Defendant asserts that Plaintiff's complaint acknowledges that Prudential Security "is a Michigan corporation and maintains its headquarters in Taylor, Michigan." (Doc. 1 at 4, ¶ 13; see also Keywell Decl. ¶ 3.) Defendant claims this is sufficient to establish personal jurisdiction and venue in Michigan courts. (Doc. 21-1 at 14.) In its reply, Defendant notes that Plaintiff does not contest that this case could have been filed in the Eastern District of Michigan. (Doc. 24 at 7.)

Plaintiff asserts claims under the FLSA, invoking the Court's federal-question subject matter jurisdiction. Prudential Security is a Michigan corporation with its headquarters and principal place of business in Taylor, Michigan. (Doc. 1 at 4, ¶ 13; see also Keywell Decl. ¶ 3.) Therefore, Defendant is subject to personal jurisdiction in Michigan and venue in the Eastern District of Michigan is proper under 28 U.S.C. § 1391(b), (c). As this action could have been brought in the Eastern District of Michigan, the Court proceeds to weigh the factors relevant to the convenience of the parties and the interests of justice to determine whether transfer is proper.

**C.    Convenience of Witnesses and the Parties**

    **1.    Convenience of Witnesses**

Defendant identifies three categories of witness that will be inconvenienced if this case remains in California, including: Prudential Security management personnel (Diane Lambert, Gregory Wier, Matthew Keywell, Terry Miller) that all reside in Michigan; the putative collective members the majority of which reside in Michigan; and the third party service, Spence Accounting Services, that handles Prudential Security's payroll which is in Michigan. (Doc. 21-1 at 15-19; Doc. 24 at 10-11.) Defendant includes the testimony that each of the listed management personnel would provide. (Doc. 21-1 at 16.) Defendant also asserts that there is no real dispute that the majority of the putative FLSA class members reside and work in Michigan.[4] (Doc. 21-1 at 16-17; Doc. 24 at 12-14.) Defendant also

---

[4] Plaintiff takes issue with the representation Defendant made regarding the number of collective members. (Doc. 23 at 17-18.) Defendant explains that it initially represented that Prudential Security had close to 1,000 current and former employees making up the putative nationwide class and that about 70% of them worked in Michigan, based on information from the Keywell Declaration, ¶¶ 6-8. (Doc. 24 at 13.) Defendant explains that this number represented the *current* employee count, and it was not until July 9, 2020 when Defendant's counsel reviewed the class list that was being compiled and sent to the third party administrator for the *Belaire-West* notice that counsel learned there were actually 3,263 current and former employees in the nationwide class. (Id.) After recognizing that counsel had erroneously previously

provides that all payroll information, databases, and records are handled by the third party in Michigan, and that information and testimony is critical for all parties in this lawsuit. (Doc. 21-1 at 19.) Defendant asserts that transferring this case to Michigan prevents burdening witnesses with time away from work, family, and community, and transfer eliminates the costs to Prudential Security and those witnesses for their travel, meals, and lodging if this case remains in this District. (Id. at 17.)

Plaintiff asserts that Defendant has not provided names of any collective members who reside in Michigan and would be willing to testify. (Doc. 23 at 17.) Plaintiff further claims that unless Defendant is suggesting its payroll provider was responsible for creating these policies, the third party payroll service will have very little to do with this case. (Id. at 18.) In reply to this claim, Defendant contends that Spence Accounting is a critical third party witness because testimony such as how pay was calculated, how minimum wage was paid in different jurisdictions around the country, how overtime was calculated, how hours worked was calculated and paid – will need to be addressed by Spence Accounting. (Doc. 24 at 14.)

"The relative convenience to the witnesses is often recognized as the most important factor to be considered in ruling on a motion under § 1404(a)." *Saleh v. Titan Corp.,* 361 F. Supp. 2d 1152 (S.D. Cal. 2005) (quoting *State Capital Corp. v. Dente,* 855 F. Supp. 192, 197 (S.D. Tex. 1994)). Notably, "[w]hile the convenience of party witnesses is a factor to be considered, the convenience of non-party witnesses is the more important factor." *Id.* (quoting *Aquatic Amusement Assoc., Ltd. v. Walt Disney World Co.,* 734 F. Supp. 54, 57 (N.D.N.Y. 1990)). In considering how to weigh this factor, courts must assess not simply how many witnesses each side has and their respective locations, but also the importance of the witnesses. *Gates Learjet Corp. v. Jensen,* 743 F.2d 1325, 1335-36 (9th Cir. 1984) (considering common law forum non conveniens dismissal and concluding district court improperly focused on the number of witnesses in each location, and should have examined the materiality and importance of the anticipated witnesses' testimony and then determined their accessibility and convenience to the forum).

Significantly, there is no real dispute that the majority of the putative FLSA class members

---

referred to the 989 *current* employee count as the current *and former* employee count, Prudential Security filed the Supplemental Keywell Declaration on July 10, 2020 (Doc. 22) to clear up this point.

reside and work in Michigan. (See Doc. 21-1 at 16-17; Doc. 24 at 12-14.) Additionally, Defendant not only identifies the key witnesses from Prudential Security management personnel that all reside in Michigan that would testify, but also includes the testimony that each would provide. (Doc. 21-1 at 15-16.) It is also uncontested that Spence Accounting handles all of Prudential Security's payroll and payroll related information. (Doc. 24 at 14; Keywell Decl., ¶¶ 4-5.) Plaintiff alleges that Prudential Security is liable for allegedly not paying proper minimum wage, not paying proper overtime, not tracking all hours worked, and other similar wage and hour accounting issues (Doc. 1 at 8, ¶ 37), and such allegations, as Defendant contends, make Spence Accounting, who handles all the payroll, a critical third party witness. (Doc. 24 at 14.) Defendant has sufficiently identified potential witnesses, the majority of which are located in Michigan, and described their testimony (see Doc. 21-1 at 15-19), such that this factor weighs in favor of transfer.

        **2.**     **Convenience of Parties**

Defendant asserts that the majority of the current and former employees that Plaintiff purports to bring the FLSA collective case on behalf of live and work in Michigan. (Doc. 21-1 at 17; Doc. 24 at 12-14.) Defendant further alleges that the documentary evidence is in Michigan. (Doc. 21-1 at 18.) Specifically, Defendant provides that Prudential Security's documents relevant to this case will be collected from Prudential Security's headquarters in Michigan or from third party payroll services in Michigan. (Keywell Decl., ¶ 4.) Defendant explains that Prudential Security's personnel documents and records are maintained in Michigan, Prudential Security's human resources is overseen from Michigan and relevant documents are in Michigan, Prudential Security's databases and servers are in Michigan, and any electronically stored information is in Michigan. (Id.) To the extent hard-copy documents are kept relevant to this case, Defendant provides that they are kept in Michigan at Prudential Security's facility in Taylor Michigan. (Id.) Defendant claims there are virtually no relevant documents located in California. (Id.) Plaintiff does not contest that most of the documentary evidence that will be used in this case is housed in Michigan. (Doc. 23 at 14.) Plaintiff instead alleges that the documents referenced are typically stored in electronic format and production of such documents would be relatively simple. (Doc. 23 at 14-15.)

Plaintiff contends that considerable weight should be afforded to Plaintiff's choice of forum.

(Doc. 23 at 13-14.) Plaintiff alleges that transfer of the case to Michigan would not eliminate any inconvenience, but rather would only serve to shift the inconvenience to Plaintiff, who would then need to travel from California to Michigan for a trial. (Id. at 16.) Plaintiff also asserts that the named Plaintiff, Joshua Cowley, resides and worked for Defendant in this District, and Plaintiff will be heavily involved in this case and his testimony will be at the forefront of this action. (Id. at 14.) Defendant notes that Cowley only worked for Prudential Security for a little over two months in California. (Doc. 21-1 at 17; Doc. 24 at 11.) Defendant challenges the suitability of Cowley as the named representative of a putative nationwide group of current and former employees that primarily reside in Michigan because other than for those two months working at one facility in California, he has virtually no experience with Prudential Security's policies and procedures. (Doc. 21-1 at 17.) Defendant asserts that the putative plaintiffs will need significantly more testimony and that additional testimony will necessarily need to come from current and former employees in Michigan. (Id.)

The fact that there is no real dispute that the majority of the putative FLSA class members reside and work in Michigan indicates that Michigan would be a more convenient forum for them. Additionally, any Prudential Security employee party witness the parties wish to call at trial will not be required to travel to California and will therefore not suffer prolonged case-related absences from their work, resulting in expense to Defendant. Although Plaintiff notes that travel would be minimized by telephonic or videoconference hearings in light of the COVID-19 pandemic, there is no evidence that the parties would be unable to make telephonic appearances in the Eastern District of Michigan.

Finally, the stark reality of the district judges' caseloads in the Fresno division of the Eastern District means that this trial may trail any criminal case or older civil case that take precedence, which will only compound the costs to the parties of a trial in this District. As discussed further below, judges in both districts are handling heavy weighted caseloads, but the statistics reflect more docket congestion in this District. Accordingly, a trial may be speedier in the Eastern District of Michigan. *See Gates,* 743 F.2d at 1337 (considering forum non conveniens motion to dismiss, noting that relative docket conditions may be accorded some, but not decisive, weight where trial in another court may be speedier because of its less crowded docket). The potential delay that may result from trial trailing has relevance to the convenience of the parties' witnesses themselves, as well as to

the costs delay will create for both sides. For these reasons, the convenience of the parties favors transfer to the Eastern District of Michigan.

**D.      Interests of Justice**

In addition to the convenience of the parties and the witnesses, courts also consider whether the interests of justice favor a transfer. Under this prong of the analysis, courts consider factors such as:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Jones*, 211 F.3d at 498-99; *see also Metz v. U.S. Life Ins. Co. in City of N.Y.*, 674 F. Supp. 2d 1141, 1145 (C.D. Cal. 2009).

**1.      Relative Court Congestion in Each Forum**

As Defendant sets forth, "[e]ven before COVID-19, the Eastern District of California faced its own judicial crisis with case overload and lack of judges." (Doc. 21-1 at 19.) Defendant cites the statistic that as of the end of 2019, this District had an average of 1,234 pending cases for its 6 District Judges, while the Eastern District of Michigan had an average of only 347 pending cases for its 15 District Judges. (Id. at 20, citing *Federal Case Management Statistics (Comparison within Circuit)*, December 31, 2019, at pp. 6, 9 (available at https://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2019/12/31-3), Scheithauer Decl., Exh. 5.) Defendant notes that time to disposition of those cases is also lower in the Eastern District of Michigan. (Id.) Defendant describes that in 2020, things have only gotten worse in the Eastern District of California. (Doc. 21-1 at 20.) In late 2019, two additional judges took senior status and on February 2, 2020 Judge Lawrence J. O'Neill (the judge previously assigned to this case) assumed inactive senior status. (See Doc. 11; Scheithauer Decl. Exh. 6 (Standing Order in Light of Ongoing Judicial Emergency in the Eastern District of California).) Defendant further describes that the inactive status of Judge O'Neill, who had been originally assigned to this case, left the parties in the case without an assigned district judge, and per the Emergency Order, this case will not be assigned a trial date until another judge is assigned. (See id.) Defendant therefore asserts that these court congestion statistics and lack of an available district

judge in this District plainly demonstrate that this factor weighs strongly in favor of transfer. (Doc. 21-1 at 20.)

Plaintiff does not dispute the judicial crisis facing this Court. (Doc. 23 at 24.) Plaintiff does however seem to suggest "other solutions," which Defendant correctly rebuts, stating that Plaintiff's suggestion that the Court could simply consolidate this case into the Kern County PAGA case pending in state court is without any support. (Doc. 23 at 21-23, 25; Doc. 24 at 15.) Plaintiff asserts that should this case remain in California, Plaintiff is willing to consolidate the Kern County PAGA action and this case. (Doc. 23 at 23.) However, as Defendant contends, potential consolidation with the PAGA case does not impact the analysis on whether this case should be transferred to Michigan. (Doc. 24 at 16.) As previously discussed, the stark reality of the district judges' caseloads in the Fresno division of the Eastern District of California would result in delay as well as additional costs for both sides. The relative court congestion in each forum favors transfer to the Eastern District of Michigan.

### 2. Plaintiff's Choice of Forum is Entitled to Some Weight

Defendant asserts that Plaintiff's choice of forum is only entitled to minimal consideration because he pursues a FLSA collective action with the majority of the FLSA collective class in Michigan. (Doc. 21-1 at 20-21.) Defendant cites *Lou v. Belzberg,* 834 F.2d 730, 739 (9th Cir. 1987), for the proposition that, "[a]lthough great weight is generally accorded plaintiff's choice of forum, when an individual brings a derivative suit or represents a class, the named plaintiff's choice of forum is given less weight." (Id.) Defendant claims that Plaintiff's choice of forum is entitled to minimal weight and no deference because Plaintiff seeks to represent a nationwide FLSA collective action with 70% of the class members in Michigan and less than 1% of the eligible members in California. (Id. at 21.)

Plaintiff counters that considerable weight should be afforded Plaintiff's choice of forum. (Doc. 23 at 13-14.) Plaintiff also asserts that the named Plaintiff, Joshua Cowley, resides and worked for Defendant in this District, and Plaintiff will be heavily involved in this case and his testimony will be at the forefront of this action. (Id. at 14.) In reply, Defendant highlights that the deference afforded to plaintiff's choice of venue is diluted when the case is a class or representative action. (Doc. 24 at 16-17.)

11

In considering this factor, courts treat FLSA collective actions like other class action cases. *See Milton v. TruePosition, Inc.,* No C 08-3616 SI, 2009 WL 323036, at *2 (N.D. Cal. Feb. 9, 2009) (Plaintiff's choice of forum afforded "some deference" in FLSA collective action because it was not a case where the operative facts occurred outside the forum or that the forum had no interest in the parties or the subject matter); *see also Holliday v. Lifestyle Lift, Inc.,* No C 09-4995 RS, 2010 WL 3910143 (N.D. Cal. Oct. 5, 2010). Therefore, though a plaintiff's choice of forum is accorded less weight in the class action context, "consideration must be given to the extent of both [the plaintiff's] and [the defendant's] contacts with the forum, including those relating to [the plaintiff's] cause of action . . . If the operative facts have not occurred within the forum and the forum has no interest in the parties or subject matter, [plaintiff's] choice is entitled to only minimal consideration." *Lou,* 834 F.2d at 739.

Although Cowley resides in California, there is no real dispute that the vast majority of the putative FLSA class members reside and work in Michigan. (See Doc. 21-1 at 16-17, Doc. 24 at 12-14.) Indeed, as Defendant points out, 70% of the class members are in Michigan and less than 1% of the eligible members are in California. (Doc. 21-1 at 21.) The Court concludes that Plaintiff's choice of forum is entitled to little weight, and it is not entitled to the deference it would receive were it not proceeding as an FLSA collective action. *See Johns v. Panera Bread Co.,* No. 08cv1071 SC, 2008 WL 2811827, *2 (N.D. Cal. July 21, 2008) (although the plaintiff resided in the district and her employment in the district led to the suit, the plaintiff's decision to seek to represent a nationwide class substantially undercut the deference afforded to the plaintiff's choice of forum).

### 3. Parties' Contact with the Forum and Related to this Action

This factor focuses on the parties' contacts with either forum. *See Ahead, LLC v. KASC, Inc.,* No. C13-0187JLR, 2013 WL 1747765, at *11 (W.D. Wash. Apr. 23, 2013). As Defendant asserts, as a putative nationwide collective action, the plaintiffs have more case-related contacts with the Eastern District of Michigan than with the Eastern District of California. (Doc. 21-1 at 21-22.) Defendant states that of the approximately 3,200 collective action members, there are only 9 in California who have not already settled and can opt-in. (Id. at 22; Keywell Decl., ¶¶ 6, 10.) Defendant also notes that it is unclear if any of those 9 would even opt-in as Prudential Security does not have

their current contact information. (Id. at 22, n.3; see Keywell Decl., ¶ 10.) As Defendant asserts in its reply, it is uncontested that the majority of the putative plaintiffs lived and worked in Michigan and have no connection to California. (Doc. 24 at 17.)

Prudential Security has limited case-related contact with the Eastern District of California through its employment of Cowley. Prudential Security's case-related contacts with California generally are limited to the few potential collective action members who worked for Prudential Security in California. The vast majority of the potential plaintiffs have contacts only to the Eastern District of Michigan. Furthermore, Prudential Security is a Michigan corporation and maintains its headquarters in Taylor, Michigan, and all of its management decisions would have been made in the Eastern District of Michigan. (See Doc. 1 at 4.) While some of the effects of these decisions were borne out in the Eastern District of California through Cowley's employment, the majority of the effects of these decisions would naturally have been felt in Michigan where the largest number of class members lived and worked. The parties' contacts with the respective forums weigh in favor of transfer.

### 4. State Most Familiar with the Governing Law

Defendant asserts that this case involves federal wage and hour claims under the FLSA and California state wage and hour claims, with the FLSA claim being the gravamen of the case. (Doc. 21-1 at 22-23.) Plaintiff asserts that he alleges nine causes of action, eight of which are based on California law. (Doc. 23 at 21.) A California district court is more familiar with California law than a district court in another state. Nevertheless, courts in all states are fully capable of applying another state's substantive law. *Strigliabotti v. Franklin Res., Inc.,* C 04-0883 SI, 2004 WL 2254556 (N.D. Cal. Oct. 5, 2004). This Court finds the existence of Plaintiff's individual California claims weighs only slightly against transfer. *See Foster v. Nationwide Mut. Ins. Co.,* No. C 07-04928 SI 2007 WL 4410408, at *6 (N.D. Cal. Dec. 14, 2007) (noting that "where a federal court's jurisdiction is based on the existence of a federal question, as it is here, one forum's familiarity with supplemental state law claims should not override other factors favoring a different forum").

### 5. Differences in the Costs of Litigation in the Two Forums

Defendant maintains that all parties would incur significant cost savings if trial were held in

Michigan. (Doc. 21-1 at 23.) Defendant asserts that, on the plaintiff's side, the vast majority of the opt-in plaintiffs would have to travel out of Michigan to California to provide testimony for purposes of trial. (Id.) Defendant also alleges that Prudential Security would incur significant cost savings if trial were held in Michigan, providing that virtually all of Prudential Security's witnesses and documents that it will need for trial are at its headquarters in Michigan. (Id. at 23-24.) Plaintiff suggests that it would be inconvenient and burdensome to transfer the case to Michigan because the Plaintiff and his counsel would have to travel for court appearances. (Doc. 23 at 19-20.) Defendant, however, maintains that it is undisputed that all parties would incur significant cost savings if trial were held in Michigan. (Doc. 24 at 18.)

As discussed above, if this case remains in this District and the trial is trailed, costs to both sides will increase. Cost savings as it relates to timely trial, accordingly, favor a transfer. The vast majority of the opt-in plaintiffs would have to travel out of state to provide testimony for purposes of trial in the Eastern District of California. As Defendant sets forth, there are approximately 3,263 putative collective members, most of whom reside in Michigan and many of which would need to travel to California for trial if they wanted to testify or participate. (Doc. 21-1 at 23; Keywell Decl., ¶ 6; Doc 22 at 2; Keywell Decl., ¶ 4) In contrast, Defendant alleges, other than the named Plaintiff, there is likely only a handful of California employees that, if they all chose to opt-in at all, would need to travel to Michigan for trial. (Id.; Keywell Decl., ¶ 10.) Additionally, Defendant would realize cost savings as its employee party witnesses reside in Michigan and would incur significant travel expense to appear in California for trial. Because both parties will realize cost savings, transferring venue does not simply result in shifting the costs from Defendant to Plaintiff. Rather, the cost of the litigation will decrease for both sides. *See Italian Colors Res. v. Am. Express Co.,* No. C. 03-3719, 2003 WL 22682482, at *5 (N.D. Cal. Nov. 10, 2003) ("Generally, litigation costs are reduced when venue is located near most of the witnesses expected to testify or give depositions."). The Court finds that the costs of each side will likely decrease if the matter is transferred, and this factor weighs in favor of transfer.

///

///

**6.     Availability of Compulsory Process to Compel Attendance of Unwilling Non-Party Witnesses**

Defendant asserts that the availability of compulsory process favors transfer because Michigan has the ability to subpoena more witnesses to trial than California. (Doc. 21-1 at 24.) As noted previously, the vast majority of current and former employees (both defendant-witnesses and putative members of the collective class) who would testify at trial reside in Michigan. (Id.; Keywell Decl., ¶¶ 6, 10-13.) Defendant cites to Federal Rule of Civil Procedure 45(c), which provides that a subpoena may command a person to attend a trial, hearing, or deposition (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person (i) is a party or a party's officer; or (ii) is commanded to attend a trial and would not incur substantial expense. (Doc. 21-1 at 24, citing Fed. R. Civ. Proc. 45(c).) Defendant alleges that it is unrealistic to expect that any former employees or third parties could be successfully subpoenaed to travel to California to testify and it is not clear that either party can force even current employees who do not want to travel to California to do so. (Id.) Defendant also asserts that the ability to subpoena third-parties, such as Spence Accounting Services (the payroll service that handles all of Prudential Security's payroll), to travel to California is virtually impossible. (Id. at 24-25, citing Fed. R. Civ. Proc. 45(c); Keywell Decl., ¶ 5.) In its reply, Defendant notes that Plaintiff does not contest that the compulsory process factor favors transfer. (Doc. 24 at 18.) This factor weighs in favor of transfer.

**7.     Ease of Access to Sources of Proof**

This factor is not a predominant concern in deciding venue as "advances in technology have made it easy for documents to be transferred to different locations." *Metz*, 674 F. Supp. 2d at 1148. Nevertheless, most of the document evidence in this case will revolve around Prudential Security's corporate and employment records, located in Michigan. As noted previously, virtually all of the documentary evidence in this case resides in Michigan, and the overwhelming majority of witnesses, both party-affiliated and third-parties, reside in Michigan. (Doc. 21-1 at 25; Keywell Decl. ¶¶ 4-6, 11-13.) As Defendant points out, Prudential Security does not maintain significant electronic files, and

records needed for this case, such as time records, are kept in banker's boxes in Michigan.[5] (Doc. 24 at 19.) Defendant asserts that because this is a wage and hour case relying heavily on payroll and timekeeping records, virtually all of the documentary evidence will come from Prudential Security. (Id.) Because documentary evidence may not be available in electronic format, this factor favors transferring the action to the Eastern District of Michigan. Further, party-employee testimony related to Prudential Security's employment and corporate records will be easiest to obtain or present in the Eastern District of Michigan. As the majority of the potential class appears to reside in Michigan, testimony of these plaintiffs will also be easier to obtain and present in the Eastern District of Michigan rather than California. The Court finds that this factor favors transfer.

### 8. Location of Relevant Agreements

Defendant asserts that the non-exempt, hourly security guards at issue in this case do not have employment agreements and are at-will employees; however, employees signed agreements confirming that they are "at-will" employees "and may be terminated for any reason permitted by the laws of the State of Michigan." (Doc. 21-1 at 25; Keywell Decl., ¶ 9, Exh. 1.) Defendant alleges that those agreements, including the one signed by Plaintiff, specifically provide that Michigan law will apply. (Id.) Plaintiff did not contest these allegations. (See Doc. 24 at 19.) The Court finds that this factor slightly favors transfer to the Eastern District of Michigan.

### 9. Local Interest in the Controversy

Defendant contends that Michigan has a greater relative interest in deciding the controversy because the overwhelming majority of the potential opt-in plaintiffs reside in Michigan. (Doc. 21-1 at 26.) Plaintiff suggests that California public policy concerns weigh in favor of this case remaining in California. (Doc. 23 at 23-24.) As Defendant points out, similar to the discussion in *Davis v. Social Serv. Coordinators*, 2013 U.S. Dist. LEXIS 118414, *29 (E.D. Cal. August 16, 2013), though California has an interest in protecting its residents from wrongful employment practices, an equally

---

[5] The parties have encountered an issue involving collection of information from documentary evidence in Michigan. Subsequent to the filing of the instant motion to change venue, Plaintiff filed a motion to compel Defendant to provide responses to Plaintiff's Special Interrogatories Nos. 1 and 2. (Doc. 49.) In that motion, Plaintiff seeks to compel the names and contact information of putative class and collective members, and the information requested is in personnel files which are stored in paper form at Defendant's office in Taylor, Michigan. (See id.)

persuasive argument exists that Michigan courts have an interest in preventing wrongful employment practices by companies that conduct business in Michigan. Moreover, because most of the opt-in plaintiffs reside in Michigan, that state has the same degree of interest as California in protecting its citizens from wrongful employment practices. The primary thrust of this action involves the employment practices of a Michigan corporation, and the majority of the class resides in, and worked for Prudential Security, in Michigan. (Doc. 24 at 20.) As such, this factor tips in favor of transfer to the Eastern District of Michigan.

In sum, the convenience of the witnesses and the parties, the relative court congestion, the parties' contacts with the respective forums and their contacts as related to this case, the costs of the litigation, the availability of compulsory process to compel attendance of unwilling non-party witnesses, the ease of access to proof, the location of relevant agreements, and Michigan's local interest all favor – to some degree – transfer to the Eastern District of Michigan. Taken as a whole, these factors outweigh Plaintiff's choice of forum and this Court's familiarity with California law, which will apply to Plaintiff's individual claims. Moreover, based on information provided, a prima facie case as to numerosity is not met to maintain a class action. For these reasons, the Court finds that transfer to the Eastern District of Michigan is appropriate.

## IV.  CONCLUSION

For the reasons set forth above, the Court **RECOMMENDS**:

1. Defendant's motion to change venue (Doc. 21) be **GRANTED**; and
2. This case be **TRANSFERRED** to the United States District Court for the Eastern District of Michigan.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within fourteen days after being served with these Findings and Recommendations, the plaintiff may file written objections with the court.  Within 14 days thereafter, the defendant may file a reply. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the

District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991); *Wilkerson v. Wheeler*, 772 F.3d 834, 834 (9th Cir. 2014).

IT IS SO ORDERED.

| Dated: | **December 10, 2020** | /s/ Jennifer L. Thurston |
|---|---|---|
| | | UNITED STATES MAGISTRATE JUDGE |